UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

   -against-

EDWIN LUCIANO RODRIGUEZ-GENAO,
                             Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/20/2025

No. 23-CR-000261-03
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Edwin Luciano Rodriguez-Genao ("Rodriguez-Genao" or "Defendant") is charged with one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). By motion noticed on December 20, 2024 (ECF No. 130), Defendant seeks to suppress evidence seized pursuant to two search-warrant authorized searches on or about November 22, 2022 and December 13, 2022. The November 19, 2022 search warrant ("November 2022 Search Warrant") authorized the search of Rodriguez-Genao's person, an apartment on Vanderveer St. in Queens Village, New York (the "Vanderveer St. Premises"), and a particular black Honda Accord (the "Black Honda Accord"). The December 13, 2022 search warrant ("December 2022 Search Warrant") authorized the search of a particular safe deposit box at a TD Bank in Queens Village, New York (the "Safe Deposit Box"). Each warrant was issued upon an affidavit by FBI Special Agent Anna Frenzilli (referred to below, respectively, as the "November 2022 Affidavit," and the "December 2022 Affidavit").

    Defendant contends that the November 2022 Search Warrant application for Rodriguez-Genao's person, Vanderveer St. Premises and Black Honda Accord lacked probable cause and not particularized. Further, Defendant argues that the December 13, 2022 Search Warrant application of the Safe Deposit Box was obtained in reliance on the fruits of the alleged illegal November 2022 Search Warrant application and was not supported by probable cause. Defendant asks the

1

Court to set an evidentiary hearing if the motion is not granted on the papers.

For the reasons set forth below, the Court denies Defendant's motion to suppress and denies request for an evidentiary hearing.

## BACKGROUND

The following facts are drawn from the May 30, 2023 Superseding Indictment (S5) (ECF No. 123) ("Ind.") and the parties' submissions: Defendant's instant motion to suppress (ECF Nos. 130) ("Mot."); his counsel's declaration in support (ECF No. 131) ("O'Reilly Decl."); the Government's opposition (ECF No. 138) ("Govt Opp'n."), and Defendant's reply (ECF No. 142) ("Def. Reply").

In the course of the investigation that led to the pertinent Superseding Indictment, the Federal Bureau of Investigation ("FBI") obtained multiple search warrants, including the two at issue here: (1) the warrant issued on or about November 19, 2022 by the Honorable Robert M. Levy, United States Magistrate Judge for the Eastern District of New York and (2) the warrant issued December 13, 2022 by the Honorable Cheryl L. Pollak, United States Magistrate Judge for the Eastern District of New York.

    i.    November 2022 Search Warrant

The November 19, 2022 Search Warrant authorized the seizure of all records relating to violations of 18 U.S.C. §§ 1001 (false statements to the FBI), 1028A (aggravated identity theft), 1512(c) (obstruction of justice), 1512(k) (conspiracy to obstruct of justice), 2314 (interstate transportation of stolen property) and 2 (aiding and abetting same) (collectively, the November 2022 Subject Offenses). (O'Reilly Decl., Ex. A.)

In support of the application, the November 2022 Affidavit set forth allegations that the FBI had been investigating a pattern of home invasions and burglaries targeting the homes of

Asian-American business owners, by a criminal enterprise, as well as the role of members of law enforcement in obstructing the burglary investigation and assisting the burglars. (*Id.* ¶ 12.) In or about 2021, the FBI interviewed Dagoberto Ramirez-Soto ("Ramirez-Soto")—suspected leader of the enterprise and fugitive—several times in connection with a burglary investigation, during which Ramirez-Soto lied about his identity to disguise his status as a fugitive. (*Id.* ¶ 13.) In or about January 2022, the FBI discovered Ramirez-Soto's identity and sought his arrest, but when the FBI arrived at his residence, they found that he and his wife had fled, with their belongings in the process of being packed up and moved into a storage unit by Defendant and others. (*Id.*) Per the warrant application, the timing and haste of Ramirez-Soto's flight led the FBI to suspect that he had been tipped off that the FBI had discovered his identity. (*Id.*) The application avers that Rodriguez-Genao assisted in the flight of Ramirez-Soto by collecting Ramirez-Soto's belongings in an apartment in the Bronx, New York and moving them to a storage unit in Queens, New York. (*Id.*)

The application avers that Defendant had communication Ramirez-Soto and Saul De La Cruz ("De La Cruz"), a then detective with the New York City Police Department who had clandestine and personal contact with Ramirez-Soto and withheld Ramirez-Soto's real identity from the FBI. (O'Reilly Decl., Ex. A. ¶¶ 24–25.) De La Cruz stated in a text message with an FBI official that Ramirez-Soto and Defendant had a relationship involving cocaine sales. (*Id.* ¶ 25) De La Cruz also told the FBI that it was Defendant who had introduced him to "Felix [Correa]" (one of Ramirez-Soto's aliases). (*Id.* ¶ 30(b).) The November 2022 Search Warrant application also attests that De La Cruz also sent Defendant messages on an encrypted messaging service. (*Id.* ¶ 26.) On multiple occasions from at least January 2022 through March 2022, De La Cruz used his cellphone to communicate with a particular phone number that Defendant used. (*Id.* ¶ 41.) De La

3

Cruz also exchanged text messages with that same phone number, which was listed in his contacts as "Superman Limpio," which the affiant understood this to describe a "clean" phone, referring to a phone number that is not "dirty," *i.e.*, linked to criminal activity. (*Id.* ¶ 46(c).)

In or about January 2022, Rodriguez-Genao collected Ramirez-Soto's belongings in an apartment in the Bronx, New York and moved them to a storage unit in Brooklyn, New York. (*Id.* ¶¶ 13, 23.) Rodriguez-Genao rented the storage unit on or about January 26, 2022. (*Id.* ¶ 44.) On February 9, 2022, during a voluntary interview with law enforcement at which De La Cruz was present, Rodriguez-Genao describing himself as "Correa's" "taxi driver" and later shared he had dined with Correa and his wife at their Bronx apartment, walked their dog, and knew that Correa hung out with Latin Kings gang members. (*Id.* ¶ 54.) Rodriguez-Genao said that Correa had given him $5,200 to rent a U-Haul truck and move Correa's belongings from Correa's Bronx apartment. (*Id.* ¶ 54(c).) He also claimed that he had paid Correa $8,000 for the belongings and later said it was Correa who threw money in Defendant's car and left. (*Id.*) According to Rodriguez-Genao, the two conducted this cash transfer in a cemetery in Queens. (*Id.*) Movers stripped Correa's apartment bare of everything including furniture, appliances, shelves, and cabinets because Correa advised them to take everything out of the apartment. (*Id.* ¶ 54(d).) Rodriguez-Genao drove the U-Haul containing the apartment's contents and left it parked on the street overnight, for safety reasons, before moving to a storage facility in Brooklyn and unloading its contents the next day. (*Id.*)

The affidavit presented further information about Rodriguez-Genao's activities around the time of Ramirez-Soto's flight. On the same day that the FBI discovered Ramirez-Soto's true identity (*i.e.*, on or about January 13, 2022), someone named Juan Valerio rented a hotel room near La Guardia Airport for a week, in cash, without a reservation, checking in using a particular phone

number ending in '8100. (*Id.* ¶ 50.) On January 19, 2022, Rodriguez-Genao rented a different hotel room near LaGuardia Airport, through January 23, 2022, without a reservation, and indicated that there would be a pet in the room. (Id. ¶¶ 51, 54.) When he rented the U-Haul truck to transport Ramirez-Soto's belongings, Rodriguez-Genao wrote down the number ending in '8100 as the alternate contact number and identified it only as belonging to "Joey R." (Id. ¶ 49.)

For probable cause, the November 19, 2022 affidavit alleged, based on a review of documents and communications with other law enforcement officers who conducted surveillance, that Rodriguez-Genao resided in the Vanderveer St. Premises (Def. Ex. A, ¶¶ 55-56) and drove the Black Honda Accord and was its registered owner. (*Id.* ¶¶ 10, 57.) The affidavit further alleged that there was probable cause to believe that evidence of the subject offenses would be found in these locations. For instance, as to the Vanderveer St. Premises and the Black Honda Accord, the affiant knew, based on training and experience, that individuals often store personal electronic devices (1) in their homes, (2) in their vehicles, including in closed compartments such as the glove compartment or center console, and (3) on their person. (Def. Ex. A, ¶ 59.) Given the affiant's training and experience, as well as the existence of encrypted communications among target subjects, such electronic devices were likely to contain evidence of communications among coconspirators, location of stolen property, and the location of fugitive Ramirez-Soto. (Id. ¶¶ 61-67.) In addition to electronically stored information, the affidavit also sought a warrant for evidence regarding liquid property such as jewelry and currency, along with firearms and ammunition, all of which were related to the pattern of thefts that Ramirez-Soto had committed. (*Id.* at ¶¶ 58, 62; p. 50 (Attachment B at ¶ 1(a)).)

ii.      December 2022 Search Warrant

The December 2022 Search Warrant sought all records relating to violations of 18 U.S.C. §§ 1001 (false statements to the FBI), 1512(c) (obstruction of justice), 1512(k) (conspiracy to obstruct justice), 2314 (interstate transportation of stolen property) and 2 (aiding and abetting same); and 21 U.S.C. § 841 (distributing narcotics) (collectively, the December Subject Offenses). The affidavit in support substantially reproduced the November 19, 2022 Affidavit's allegations in support of probable cause for the December Subject Offenses. In support for the additional narcotics distribution subject offense, the December 2022 Affidavit reported that, pursuant to the November 19, 2022 Warrant, law enforcement had searched Defendant's car and found suspected cocaine, drug paraphernalia and ammunition in a trap compartment. (*See* O'Reilly Decl. Ex. D (December 2022 Search Warrant Affidavit) ¶ 51.)

The December 13, 2022 Affidavit alleged there was probable cause to believe that evidence of the subject offenses would be found in the safety deposit box. Based on bank records, law enforcement learned that Rodriguez-Genao rented the Safe Deposit Box. (*Id.* ¶¶ 52-53). As safe deposit boxes are not subject to routine inspection by law enforcement or bank personnel, the affiant attested, based on training and experience, that individuals often store items in safe deposit boxes that individuals wish to keep hidden. (*Id.* ¶ 55.) The application stated that such use was considered to be particularly likely with respect to the Safe Deposit Box, given Defendant's use of a hidden compartment in his car. (*Id.* ¶ 56.)

iii.     Fruits of the Searches

Agents executed the search of the Vanderveer St. Premises on or about November 22, 2022 (FBI search inventory attached as O'Reilly Decl. Ex. B), the Black Honda Accord on or about December 2, 2022 (FBI search inventory attached as O'Reilly Decl. Ex. C), and the Safe Deposit

6

Box on or about December 14, 2022 (FBI search inventory attached as O'Reilly Decl. Ex. E). From the Vanderveer St. Premises, agents recovered, *inter alia*, an NYPD detective badge, safe deposit box keys, and electronic devices. (O'Reilly Decl. Ex. B.) From the Black Honda Accord, agents found a trap compartment containing ammunition, a scale, packaging material, and a white powdery substance that agents identified as cocaine; agents also recovered a cellphone from the dashboard. (O'Reilly Decl. Ex. D; December 13, 2022 Affidavit at ¶ 51.) From the Safe Deposit Box, agents recovered fifteen $100 bills and a silver ring. (O'Reilly Decl. Ex. E.)

    iv.    Superseding Indictment (S5)

As a result of the FBI's investigation, including findings from the November 2022 and December 2022 search warrants, the Superseding Indictment charges that from approximately 2017 through 2022, an alleged criminal group referred to as the "Enterprise" which included Defendant Rodriguez-Genao and was organized by fugitive Dagoberto Ramirez-Soto committed residential burglaries and home invasion robberies. The Enterprise predominantly targeted Asian-American small business owners because the Enterprise's assumption was that Asian-Americans had more cash and valuables at home than other potential targets. Defendant Rodriguez-Genao and several co-defendants allegedly participated in the Enterprise's criminal activity, which also included the use of false identification, bank fraud, and laundering theft proceeds. As part of his activities with the Enterprise, alleged leader Ramirez-Soto committed two gunpoint home invasion robberies in Queens County, New York.

The Enterprise alleged stalked potential victims before entering and stealing valuables. The Enterprise allegedly stole large amounts of cash, jewelry, and family heirlooms. The indictment states that the Enterprise also targeted drug dealers, stealing large quantities of drugs including heroin, cocaine, and marijuana. As alleged, Rodriguez-Genao and others violated 18 U.S.C. §

1962(d), in that they agreed to conduct and participate in the conduct of the affairs of an enterprise affecting interstate commerce through a pattern of racketeering activity. The pattern of racketeering activity consisted of multiple acts involving robbery and bribery under New York Penal Law, as well as violations of 18 U.S.C. §§ 1028 (relating to fraud and related activity in connection with identification documents), 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1512 (relating to tampering with a witness, victim, or an informant), 1951 (relating to interference with commerce, robbery, or extortion), 1952 (relating to racketeering), 1956 (relating to the laundering of monetary instruments), 2314 and 2315 (relating to interstate transportation of stolen property).

Defendant seeks to suppress evidence seized pursuant to two search-warrant authorized searches on or about November 22, 2022 and December 13, 2022. Alternatively, Defendant asks the Court to set an evidentiary hearing if the motion is not granted on the papers.

## LEGAL STANDARD

*Motions to Suppress and Evidentiary Hearings*

To defeat a suppression motion, "[t]he Government bears the burden of proof as to establishing probable cause" or reasonable suspicion, as the case may be. *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008). The Government must make this showing "by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotation mark omitted). A defendant

may not rely on "bald assertions," and "[w]ithout specification of the factual basis" that supports suppression, "the district court is not required to have a hearing." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998); *see also United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) ("A hearing is not required if the defendant's statements are general, conclusory or based on conjecture."). Moreover, although the Government's reliance on "unsworn statements" in its Memorandum of Law may generally not be enough for a court to make a finding of fact, *see United States v. Marquez*, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005), a defendant nevertheless bears the initial burden of establishing, by an affidavit of someone with personal knowledge of the underlying facts, that there are, in fact, disputed issues of material facts, *Viscioso*, 711 F. Supp. at 745 (citing *United States v. Caruso*, 684 F. Supp. 84, 87 (S.D.N.Y. 1998)). "[A]n attorney's affidavit, absent personal knowledge[,] is insufficient to justify a suppression hearing." *United States v. Cook*, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004). *See, e.g.*, *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) ("The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of [the affiant].").

*Search Warrants*

The Fourth Amendment prohibits "unreasonable searches and seizures," and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. As the Supreme Court has stated, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Therefore, the probable-cause determination "is not overly strict." *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005). "Presented with a warrant application, [a] judge must 'simply ...

make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317) (emphasis in original). "The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 235, 103 S.Ct. 2317).

Once a warrant has been issued by a judge and executed, the duty of a court reviewing a magistrate judge's probable cause determination on a motion to suppress is far more limited: its task is "simply to ensure that the magistrate had a 'substantial basis for ... [concluding]' that probable cause existed." *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). The issuing magistrate's decision is "entitled to substantial deference, and 'doubts should be resolved in favor of upholding the warrant.'" *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)). Indeed, the magistrate's "finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant." *Travisano*, 724 F.2d at 345. "Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant[.]" *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 232, 103 S.Ct. 2317). Thus, the "task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." Id. (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317).

*Exclusionary Rule*

"Evidence obtained by exploitation of a primary illegality is regularly excluded under traditional taint analysis as the 'fruit of the poisonous tree.'" *United States v. Morales*, 788 F.2d 883, 885 (2d Cir. 1986) (citing *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). This exclusionary rule "reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *United States v. Cacace*, 796 F.3d 176, 188 (2d Cir. 2015) (quoting *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984)). For evidence to be suppressed, it is not enough to establish that the evidence would not have been obtained "but for" the illegal search or seizure. *See United States v. Nayyar*, 221 F. Supp. 3d 454, 467 (S.D.N.Y. 2016). "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. 407 (internal quotation and citation omitted).

## DISCUSSION

Defendant contends that the November 2022 Search Warrant Application for Rodriguez's person, home and car lacked probable cause, was not particularized and therefore overbroad. (Mot. at 11.) Further, Defendant argues that the December 13, 2022 safe deposit box search warrant application was obtained in reliance on the fruits of the alleged illegal November 2022 search warrant application, and it was not sufficiently supported by probable cause to believe that the safe deposit box contained evidence of a crime. (*Id.* at 18.) The Court finds these arguments unavailing.

I.       Defendant Lacks Standing to Challenge Search Warrants

As a preliminary matter, Defendant's motion to suppress is denied without a hearing because he has failed to establish standing to challenge the searches. "Fourth Amendment rights are personal rights[,] which ... may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). Thus, to establish standing in the Fourth Amendment context, the defendant or someone with personal knowledge must submit sworn evidence "demonstrating sufficient facts to show that he had a legally cognizable privacy interest" in the property searched or seized. *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), aff'd sub nom., *United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995)); *United States v. Loera,* 333 F. Supp.3d 172, 179 (E.D.N.Y. 2018), *aff'd sub nom.*, *United States v. Guzman Loera,* 24 F.4th 144 (2d Cir. 2022) (defendant's burden "is met only by sworn evidence, in the form of affidavit or testimony, from the defendant or someone with personal knowledge" (citation omitted)). Further, Courts in this Circuit have "repeatedly" denied motions to suppress without a hearing "where defendants have failed to provide affidavits alleging facts based on personal knowledge." *United States v. Arteaga*, No. 23-CR-334 (DLI), 2024 WL 4766237, at *2 (E.D.N.Y. Nov. 13, 2024) (citing *United States v. Perryman*, 2013 WL 4039374, at *6 (E.D.N.Y. Aug. 7, 2013) (collecting cases). Moreover, "an attorney's affidavit, absent personal knowledge[,] is insufficient to justify a suppression hearing." *United States v. Cook*, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004).

The fact that the Government intends to prove that the property belongs to Defendant does not establish standing. *See, United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) ("[D]efendant could not challenge the search of a residence merely because he anticipated that the Government will link the objects recovered in that search to defendant at trial."); *United States v. Tartaglione*, 2023 WL 2237903, at *10 (S.D.N.Y. Feb. 27, 2023) ("The Government's efforts to

12

connect a defendant to the subject of a search do not suffice to establish standing.") While Defendant's counsel states that an affidavit from Defendant establishing that he has standing to challenge the search warrants was in process and would be served to the Court and the Government immediately upon receipt, the Court has not yet received such an affidavit. (*See* Def. Reply, at 7.) Thus, as the Government argues in its opposition, Defendant has not established standing to challenge the November 2022 and December 2022 Warrants. (Gov't Opp'n. at 12.) Consequently, Defendant's motion to suppress is denied without a hearing.

II.     Probable Cause for November 13, 2022 Search Warrant

Notwithstanding Defendant's failure to establish standing, Defendant's motion also is denied because it lacks merit. Defendant argues that the November 2022 Search Warrant application did not provide sufficient probable cause to suggest that evidence of the Subject Offenses would be found in the premises searched (*i.e.*, Defendant's person, home, and car). Consequently, Defendant construes the warrant as overbroad, but Defendant's argument is misguided. The November 2022 Search Warrant application provided sufficient probable cause and particularity to satisfy the requirements under the Fourth Amendment.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "The Supreme Court has explained that 'probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). When evaluating whether probable cause exists in a case, a judge must "'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him

13

[or her], ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (quoting *Falso*, 544 F.3d at 117). Given the initial subjective standard, "a reviewing court generally accords substantial deference to the finding of an issuing judicial office that probable cause exists, limiting [the] inquiry to whether the office had a substantial basis for his [or her] determination." *United States v. Wey*, 256 F. Supp. 3d 355, 382 (S.D.N.Y. 2017) (citation and internal quotations omitted). That deference, however, is limited, and it is within the reviewing court's purview to "'decide whether the magistrate performed [their] neutral and detached function on the facts before [them] and did not merely serve as a rubber stamp for conclusions drawn by the police.'" *United States v. Cardona*, No. 14–CR–314 (RA), 2015 WL 769577, *4 (S.D.N.Y. Feb. 24, 2015) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)). The crucial "'task of a reviewing court is simply to ensure that the totality of the circumstances afforded the magistrate a substantial basis for making the requisite probable cause determination.'" *United States v. Lustyik*, 57 F. Supp. 3d 213, 224 (S.D.N.Y 2014) (quoting *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011)).

In the present case, the totality of the circumstances afforded the Honorable Robert M. Levy a substantial basis for making the determination that there was probable cause to believe that evidence of the November Subject Offenses (violations of Title 18, United States Code, Sections 1001 (false statements to the FBI), 1512(c) (obstruction of justice), 1512(k) (conspiracy to obstruct of justice), 1028A (aggravated identity theft), 2314 (interstate transportation of stolen property) and2 (aiding and abetting same)) would be found on Defendant's person and in his home and car. As alleged, the enterprise's dealings involve multiple layers of duplicity, including conspirators' use of aliases, false identity documents, corruption of a law enforcement officer, use of encrypted electronic communications, absconding from prosecution, and false statements to the FBI. As

such, the November 2022 Search Warrant Application included categories of evidence that reflected the scope and complexity of the dealings themselves. Namely, it sought evidence involving communication related to and the possession, use, storage, location, purchase, sale or transfer of stolen property, precious metals, jewelry, currency, firearms and ammunition, evidence of research into the same, and evidence concerning occupancy of the Subject Premises. (O'Reilly Decl. at 50. (Attachment B).) These categories are justified by ample support in the November 2022 Search Warrant Affidavit, including sufficiently alleging a relationship between Ramirez-Soto and Defendant as conspirators that included stolen property including jewelry and money transfers, describing the probability of firearms being used in the commission of the Subject Offenses, and describing the complexity of the alleged crimes. For instance, on the date that Ramirez-Soto absconded, someone named Juan Valerio, who had prior felony convictions for firearms and narcotics offenses rented a hotel room near La Guardia Airport for a week, in cash, without a reservation, and checked in using a particular phone number ending in -8100. (O'Reilly Decl. Ex. A ¶ 50.) Defendant rented a different hotel room near LaGuardia on nearly consecutive dates and indicated that there would be a pet in the room. (*Id.*) Further, when Defendant rented the U-Haul truck to transport Ramirez-Soto's belongings, Defendant listed the same number ending in -8100 as an alternative contact, which he identified it belonged to "Joey R." (O'Reilly Decl. Ex. A ¶¶ 49–51). There are numerous reasonable inferences that support the probability that Defendant had contact and communication with Ramirez-Soto and could have evidence supporting the Subject Offenses in the Subject Premises, since they were under the control of Defendant. "A showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F. 3d 168, 182 (2d Cir. 2004).

Moreover, the November 2022 Warrant Application also sought to obtain types of evidence that could assist law enforcement in ascertaining the identity or location of, and communications with, conspirators or aiders and abettors of the Subject and including authorization for the search of electronic stored information. Defendant argues that the November 2022 Search Warrant lacked particularity with respect to the authorization to seize any electronic devices and computers and was overbroad. (Mot. at 15.) The Second Circuit has explained that to satisfy the particularity requirement, a warrant must have "three components": (1) "[the] warrant must identify the specific offense for which the police have established probable cause[,]" (2) it must "describe the place to be searched[,]" and (3) it must "specify the items to be seized by their relation to designated crimes." *Galpin* at 445–46. The November 2022 Search Warrant (1) identifies the specific offenses, (2) it describes the places to be searched and, (3) described the particular types of materials to be seized (*e.g.*, photographs, communications, geographic location, and evidence of financial transactions obtained from the commission of the offenses). When specifying the items to be seized, a warrant may list particular categories of items to be seized as evidence of the crimes designated in the warrant. *See United States v. Robinson*, No. 16-CR-545, 2018 WL 5928120, at *17 (E.D.N.Y. Nov. 13, 2018) (rejecting particularity challenge to warrant that set out "the particular categories of property to be seized which 'constitute[d] evidence, instrumentalities, contraband or fruits of the Subject Crimes,'" and where the warrant only authorized the seizure of property to the extent that it related to the crimes described in the supporting affidavit). A warrant is overbroad if its "description of the objects to be seized ... is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (citation and quotation marks omitted). That is not the case here. "The Fourth Amendment does not require a perfect description of the data to be searched and seized." *Fonville*

16

*v. Yu,* No. 17-CV-7440, 2021 WL 3145930, at *7 (E.D.N.Y. July 26, 2021) (citation and quotation marks omitted). The Fourth Amendment also does not "require that every item or document to be seized be specifically identified in the warrant." Levy, 2013 WL 664712, at *5. Moreover, the particularity requirement does not eliminate an officer's discretion. *United States v. Ukhuebor*, No. 20-MJ-1155, 2021 WL 1062535, at *4–5 (E.D.N.Y. Mar. 19, 2021) (citation and quotation marks omitted). Warrants that run afoul of particularity requirements are ones that describe evidence to be seized in terms that are "so vague" that they "reasonably [fail] to alert executing officers to the limits" of the scope of their search and their seizure authority." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011)).

Here, The November 2022 Search Warrant application provides multiple examples of electronic communications among coconspirators, including by phone, text and encrypted chat message. (*See*, *e.g.*, O'Reilly Decl. Ex. A, ¶¶ 30(e), 42–43, 58; Complaint ¶ 9(e) (noting that Ramirez-Soto had ten phones)), and also including messages between the Defendant and De La Cruz (O'Reilly Decl. Ex. A, ¶¶ 46-48). To reiterate, probable cause "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found." *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Such communications were likely to evidence the Subject Offenses, by providing insight into the relationship between the Defendant and Ramirez-Soto and exchanges including coordination of the transportation of the property in Ramirez-Soto's apartment, in which there was a fair probability that items stolen during Ramirez-Soto's burglaries would be found. (O'Reilly Decl. Ex. A, ¶¶ 62–66.) Therefore, the Court finds that there was a fair probability that these communications contained evidence of the November 2022 Subject Offenses. Like the other categories of evidence to be searched in the November 2022 Search Warrant, the authorization to

seize any electronic devices and computers meets the particularity requirements of the Fourth Amendment. Accordingly, the Court denies the Defendant's motion to suppress the November 2022 Search Warrant in its entirety and concludes that a hearing is unnecessary.

III.     Probable Cause for December 2022 Search Warrant

As for the December 2022 Warrant, Defendant argues that the Safe Deposit Box search warrant application was obtained in reliance on the fruits of the 'illegal' November 2022 Search Warrant Application. Defendant further contends that the search was not supported by sufficient probable cause to believe that the safe deposit box contained evidence of a crime. (Mot. at 18.) However, having found that the November Warrant valid, the Court finds that the items seized under the December 2022 Warrant are not the fruits of illegal searches. Moreover, the Government argues, and the Court agrees, that the application provided sufficient probable cause to issue the December 2022 Search Warrant because (i) the affiant knew, based on training and experience, that individuals often store items in safe deposit boxes that individuals wish to keep hidden, (ii) if an electronic device is particularly important and contains information that is particularly sensitive, an individual may store such a device in a secure location such as a safe deposit box, (iii) individuals may use such spaces to store contraband, stolen goods, currency and other valuables that are the proceeds of crime, and documents that reveal criminal activity and (iv) the affiant knew that, such use was particularly likely given Defendant's use of a hidden compartment in his car, maintenance of a safe deposit box key, and apparent involvement in the drug trade. Even if the warrant were not supported by probable cause, suppression of the fruits of that search would still not be warranted, because the Court finds that the officers executing that warrant acted reasonably and in good faith. *United States v. Leon*, 468 U.S. 897, 922 (1984). Accordingly, the Court concludes that the December 2022 Search Warrant application contained sufficient probable cause

to support its issuance. Thus, finding both search warrants to be valid, Defendant's Motion to Suppress the physical evidence seized as a result of these searches is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is denied in its entirety. Defendant's request for a hearing is also denied. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 130.

SO ORDERED

Date: March 20, 2025
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge